

CJ-11-9396
Graves

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

FILED IN THE DISTRICT COURT
OKLAHOMA COUNTY, OKLA.

NOV 18 2011

PATRICIA PRESLEY, COURT CLERK
by ______ DEPUTY

SABRA SEAGRAVES, an individual,

Plaintiff,

v.

CONSECO HEALTH INSURANCE COMPANY, a foreign insurance company,

Defendant.

Case No. CJ-2011-9396

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

**PETITION**

Plaintiff Sabra Seagraves, by and through her attorneys of record, BROWN & GOULD, PLLC, for her Petition against Defendant Conseco Health Insurance Company, alleges and states as follows:

**I.**
**PARTIES**

1. Plaintiff Sabra Seagraves ("**Plaintiff**") is an individual resident of Le Flore County, Oklahoma.

2. Defendant Conseco Health Insurance Company ("**Defendant**") is a foreign insurance company authorized to do business in the State of Oklahoma that may be served with process by and through its mandatory designated agent pursuant to OKLA. STAT. tit. 36, §§ 621-622, John Doak, Oklahoma Insurance Commissioner, Oklahoma Insurance Department, P.O. Box 53408, Oklahoma City, Oklahoma 73152-3408.

**II.**
**JURISDICTION AND VENUE**

3. This Court has general and original jurisdiction over Plaintiff's claims for breach of contract, bad faith, and declaratory relief. Furthermore, Plaintiff has sustained damages and other



EXHIBIT 1

losses in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

4. Venue is proper in Oklahoma County, Oklahoma because it is where Defendant conducts business, where Defendant is subject to personal jurisdiction, and where Defendant has an agent for the service of process.

5. All conditions precedent to instituting this action have occurred, been performed, were waived, or have otherwise been satisfied.

## III.
## FACTS GIVING RISE TO THIS CAUSE OF ACTION

6. Defendant is in the business of selling and administering, among other types of insurance, guaranteed renewable, "limited benefit" or "supplemental" cancer insurance policies that pay direct cash benefits in connection with certain goods, services, treatments, burdens, inconveniences or obligations associated with cancer.

7. On or about February 2008, Plaintiff purchased from Defendant a guaranteed renewable, supplemental cancer insurance policy denominated Form C1000/PS3OK-BZ and bearing policy/certificate number 303,074,610 (the "**Policy**"), a true and correct copy of which is attached as **Exhibit "1"**.

8. As a "supplemental health product" that is designed to "help fill the gaps" in Plaintiff's primary health insurance, the Policy provides ***direct cash benefits*** to Plaintiff should she or a covered family member be diagnosed with cancer. *See* Ex. 1, Policy, at Introductory Letter.

9. The Policy is not considered "major-medical" health insurance, and therefore, is not designed to directly discharge or otherwise satisfy any part of the medical debt a policyholder incurs

for medical treatment.

10. In contrast to major-medical insurance, the Policy is designed to provide "supplemental" cash benefits directly to their policyholders (not to doctors), without regard to any other insurance the policyholder may have.

11. The very purpose for these "supplemental" cancer policies is to help defray the non-medical costs, burdens, inconveniences or other obligations associated with cancer treatment, such as lost earnings, travel expenses, and other hardships.

12. Accordingly, subject to certain express limitations, the Policy pays cash benefits directly to the policyholders (not to providers) for, among other things, hospital confinements, inpatient drugs and diagnostic testing, inpatient attending physicians and nurse care, ambulance trips, hospice care, transportation, and lodging. *See, e.g.,* Ex. 1, Policy, at Section 8: Benefit Schedule.

13. In addition, the Policy provides:

> Subject to the terms, conditions, limitations and exclusions of this policy, we will pay the following benefits for loss due to cancer. ***This includes benefits for any condition which is caused by or results from cancer or the treatment of cancer.***

See Ex 1, Policy, Section 3: Benefits: Our Promise to Pay at p. 4 (emphasis added).

14. At all relevant times, Plaintiff paid all premiums necessary to maintain the policy and keep all of its coverages and benefits in force and in effect.

15. While all coverages under the Policy were in full force and effect, Plaintiff's covered spouse, William E. Seagraves ("**Mr. Seagraves**"), now deceased, was diagnosed with cancer.

16. Specifically, Mr. Seagraves was diagnosed with Myelodysplasia ("**MDS**") in September 2008 and received a bone marrow transplant on March 3, 2009, which is the only known treatment for MDS.

17. Plaintiff provided Defendant with notice that Mr. Seagraves had been diagnosed with cancer within the meaning of the Policy.

18. Following his bone marrow transplant, Mr. Seagraves developed numerous infections as a result of this cancer treatment, including Graft-versus-Host Disease ("**GvHD**").

19. Mr. Seagraves received multiple forms of cancer treatment from his medical service providers as well as multiple treatments addressing the infections and GvHD resulting from the treatment for his cancer.

20. Plaintiff made claims for benefits under the Policy supported by several statements, bills and invoices that listed the charges for the cancer treatments, infection treatments, and GvHD treatments Mr. Seagraves received.

21. Defendant has sufficient knowledge and understanding of cancer treatment, including the administration or application thereof, and the risk of complications related to cancer treatments, to properly adjust claims for benefits under the Policy.

22. At the time Plaintiff purchased the Policy, the parties understood and agreed that the Policy required Defendant to pay her cash benefits not only in connection with loss due to cancer treatment, but benefits for any condition which is caused by or results from cancer or the treatment of cancer as well.

23. Plaintiff submitted statements of charges to Defendant that established that in connection with Mr. Seagraves' treatment for cancer, he received treatments for a condition which was caused by or resulted from his treatment of cancer.

24. Although these statements establish that Mr. Seagraves was treated for a condition which was caused by or resulted from his treatment of cancer, Defendant has failed and refused to

pay benefits in connection with those treatments.

25. Contrary to Defendant's erroneous claims determination, the care and treatment Mr. Seagraves received after his covered cancer treatment was directly caused by or resulted from his cancer treatment, and is thereby covered under the Policy.

26. Defendant has failed to pay Plaintiff several benefits due and owing under the Policy for hospital confinement, blood products received, ambulance transportation, clinical diagnosis, convalescent care and progressive payments.

## IV.
## THEORIES OF RECOVERY

### A.
### FIRST CLAIM
### (BREACH OF CONTRACT)

Plaintiff incorporates all of her prior allegations here by reference.

27. Defendant arbitrarily and capriciously breached its obligations under the cancer insurance policy issued to Plaintiff by denying full payment of benefits to Plaintiff when benefits were clearly covered under the Policy.

28. As a result of Defendant's breach of contract, Plaintiff has been injured and damaged and is entitled to recover those damages from Defendant.

WHEREFORE, Plaintiff prays for judgment against Defendant on her First Claim for the following relief:

a. contractual and compensatory damages against Defendant in an amount in excess of an amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code including but not limited to, unpaid benefits and contractual interest on benefits owed under the Policy;

b. prejudgment and post judgment interest;

c. costs, including but not limited to court costs, expert fees, attorney's fees and expenses; and

d. such other and further relief as the Court deems appropriate under the circumstances presented.

**B.**
**SECOND CLAIM**
**(BAD FAITH)**

Plaintiff incorporates all of her prior allegations here by reference.

29. Defendant knowingly and intentionally handled the insurance claims of Plaintiff as a matter of routine business practice in handling like claims under like policies.

30. Defendant breached its duty to deal fairly and act in good faith towards Plaintiff by:

a. failing and refusing payment and other policy benefits due Plaintiff at a time when Defendant knew that she was entitled to those benefits;

b. failing to properly investigate Plaintiff's claim and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c. withholding payment of the benefits even though Defendant knew Plaintiff's claim for those benefits was valid;

d. refusing to honor Plaintiff's claim for reasons contrary to the express provisions of the subject policy and/or Oklahoma law;

e. refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the Policy;

f. refusing to honor Plaintiff's claim by knowingly misconstruing and misapplying provisions, terms and/or definitions of the subject policies;

g. failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under the Policy, to include Plaintiff's claims;

h. not attempting in good faith to effectuate a prompt, fair and equitable

settlement of Plaintiff's claims once liability had become reasonably clear;

i. forcing Plaintiff, pursuant to their standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable; and

j. failing to properly evaluate any investigation that was performed.

31. As a proximate result of Defendant's breach of its duty of good faith and fair dealing, Plaintiff has suffered aggregate damages and other loss in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, in the form of policy benefits, mental and emotional distress, financial hardship, attorney expenses and other incidental damages.

32. Defendant has acted intentionally and with malice towards others or has been guilty of reckless disregard for the rights of others, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant on her Second Claim for the following relief:

a. Compensatory damages against Defendant, including but not limited to unpaid covered losses and contractual interest on payments owed;

b. Emotional distress damages;

c. Punitive damages;

d. Pre-judgment and post-judgment interest on all damages;

e. Costs, including but not limited to court costs, expert fees, attorney's fees and expenses; and

f. All further relief as the Court deems appropriate under the circumstances presented.

### C.
### THIRD CLAIM
### (DECLARATORY RELIEF)

Plaintiff incorporates all of her prior allegations here by reference.

33. An actual controversy exists between Plaintiff and Defendant concerning the meaning of the language of the Policy at Section 3: Benefits: Our Promise to Pay, at p. 4.

34. Plaintiff interprets this provision to require Defendant to pay benefits for losses and treatments policyholders receive for conditions which are caused by or results from cancer or the treatment of cancer, including the treatment Mr. Seagraves received for GvHD.

35. In contrast, Defendant interprets this provision to exclude coverage for conditions which are caused by or results from cancer or the treatment of cancer, including the treatment Mr. Seagraves received for GvHD.

WHEREFORE, Plaintiff prays for judgment against Defendant on her Third Claim for the following relief:

a. Entry of a declaratory judgment that finds that Defendant is to pay benefits for loss and treatment for conditions which are caused by or results from cancer or the treatment of cancer, including the treatment Mr. Seagraves received for GvHD.

b. Costs, including but not limited to court costs, expert fees, attorney's fees and expenses; and

c. Such other and further relief as the Court deems appropriate under the circumstances presented.

## V.
## JURY DEMAND

Plaintiff requests that a jury be convened to try the factual issues in this case.

## VI.
## FINAL PRAYER

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendant for actual and compensatory damages and declaratory relief, together with costs, pre- and post-judgment interest, punitive damages, emotional distress damages, and attorney's fees, costs, and any other relief as may be appropriate.

George H. Brown, OBA #18020
Tony Gould, OBA #18564
Joshua Stockton, OBA #21833
**BROWN & GOULD, PLLC**
136 N.W. 10th Street
Oklahoma City, Oklahoma 73103
Telephone: (405) 235-4500
Facsimile: (405) 235-4507
Email: jstockton@browngouldlaw.com

Salora S
Shiloh



CONSECO.
Step up.

# Your insurance policy documents

*Administrative Office*
11825 N. Pennsylvania Street,
Carmel, IN 46032

POLICY-COVER (03/07) 127553
© 2007 Conseco Services, LLC

conseco.com

EXHIBIT
1

*CONSECO HEALTH INSURANCE COMPANY*
*Home Office: Phoenix, AZ*
*Administrative Office: 11825 N. Pennsylvania St.*
*Carmel, IN 46032-4555 • Telephone: 1-800-541-2254*

FEBRUARY 14, 2008

SABRA SEAGRAVES
24143 BRAZIL CREEK LOOP
SHADY POINT OK 74956

Policy\Certificate Number: 303,074,610
Policyowner\Certificateholder: SABRA SEAGRAVES

Dear SABRA SEAGRAVES

Welcome! We're pleased that you have chosen Conseco Health Insurance Company, one of the leading providers of supplemental health products, to help fill the gaps in your health insurance. We have enclosed your policy/certificate, which details the benefits available with your insurance product.

Your policy/certificate includes one of our valuable premium-back riders. Since 1981, we have returned over $250,000,000 in premium to policyholders and certificateholders. Please refer to your policy/certificate for specific details.

At Conseco Health Insurance Company, we're providing coverage and service for millions of Americans . In fact,we can continue to improve your financial security with a variety of health insurance products. As you examine your health needs, I hope you'll keep in mind the advantages, benefits and features of our coverage .

For your customer service needs or product information, please call Conseco Health Insurance Company at 800-541-2254 .

Thanks again for choosing Conseco Health Insurance Company. We appreciate the opportunity to help you step up to a better, more secure future.

Sincerely,

Michael J Dibser

Conseco Health Insurance Company

ST(493)$

# CONSECO HEALTH'S

# CUSTOMER SERVICE DEPARTMENT:

## Toll Free 1-800-541-2254

With Conseco Health Insurance Company you not only receive valuable insurance protection you also get the very best in customer service.

Please call us whenever you:

- ☐ need a claim form;
- ☐ change your address;
- ☐ would like to add or remove family members from your coverage;
- ☐ change your name; or,
- ☐ would like to change your premium payment plan.

We are here to serve you!



*CONSECO HEALTH INSURANCE COMPANY*
*Home Office: Phoenix, AZ*
*Administrative Office: 11825 N. Pennsylvania St.*
*Carmel, IN 46032-4555 • Telephone: 1-800-541-2254*

# CANCER POLICY


THIS IS A LIMITED POLICY - PLEASE READ CAREFULLY
THIS POLICY IS GUARANTEED RENEWABLE FOR LIFE

## POLICY INDEX

| | |
|---|---|
| Policy Schedule | Attached |
| Definitions | Section 1 |
| Eligibility for Benefits | Section 2 |
| Benefits | Section 3 |
| Return of Premium | Section 4 |
| Limitations and Exclusions | Section 5 |
| General Provisions | Section 6 |
| Claim Provisions | Section 7 |
| Benefit Schedule | Section 8 |
| Surgical and Anesthesia Schedule | Section 9 |
| Riders, Endorsements, Amendments, if any | Attached |
| Application | Attached |

This policy is a legal contract between the Policyowner and Conseco Health Insurance Company. We agree to insure you against loss due to cancer based on the application and in return for premium payments. IT IS IMPORTANT that you read the entire policy, including the application, and write to us within 10 days if any information shown in the application is incorrect or incomplete.

**TEN-DAY OPTION TO SURRENDER**

If for any reason the Policyowner is not satisfied with this policy, it may be returned to an authorized agent of the Company or to our Administrative Office within 10 days after it is received for a complete refund of premium and cancellation of the policy. If we do not return all premiums paid within 30 days from the date of cancellation, we will pay interest on the premiums.

**GUARANTEED RENEWABILITY PRIVILEGE - PREMIUM CHANGE**

This policy is continuously renewed during the Policyowner's lifetime by the payment of premiums when due. We reserve the right to change premium rates upon written notice to your last known address at least 60 days before the change is to become effective. Such changes may only be made for all policies of this form number and premium classification issued in the same state. Premium classification is determined by issue age, type and level of benefits and payment method. You cannot be singled out for a premium rate change.

This policy is executed on behalf of CONSECO HEALTH INSURANCE COMPANY by its President at its Administrative Office in Carmel, Indiana.

Michael J Dubzer

President

Countersigned ______________________
Licensed Resident Agent (when required by law).

**WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.**

## SECTION 1: DEFINITIONS

When the terms below are used in this policy, the following definitions apply:

**WE, US, OUR, COMPANY** Means Conseco Health Insurance Company.

**POLICYOWNER** Means the person named as the Policyowner in the Policy Schedule.

**YOU, YOUR, YOURSELF, INSURED PERSON** Means, if this is an individual policy, only the Policyowner.

Means, if this is a family policy, the Policyowner and the Policyowner's spouse and/or children.

On the Effective Date of this policy, "Spouse" means the insurable person named as spouse on the application and married to the Policyowner as of that date. The Policyowner can terminate the spouse's insurance by notifying us in writing. If the Policyowner remarries, the Policyowner can change the person designated as spouse by following the procedures below for adding a spouse. Only one person can be insured as spouse at any given time.

On the Effective Date of this policy, "Children" means the Policyowner's natural children, step-children; legally adopted children, children for whom the Policyowner has permanent legal custody, or children placed with the Policyowner for adoption, who are:

- Insurable and named on the application;
- unmarried; and,
- chiefly dependent on the Policyowner or spouse for support; and are either:
  - younger than 21, or younger than 26 if they are full-time students in a licensed or accredited school; or,
  - mentally or physically handicapped, became so handicapped prior to age 21, and cannot support themselves because of such handicap.

The definition of "full-time student" is based on the criteria for "full-time student" in the school where the student is enrolled.

For handicapped children, you must, where possible, provide us proof of the child's incapacity and dependency no more than 31 days after the child reaches age 21. Thereafter, such proof must be provided at our request, but not more frequently than annually.

A child's insurance will terminate on the date on which that child ceases to meet the above conditions. Our acceptance of premium after this date is considered as premium only for the remaining persons who qualify under this policy. It is the Policyowner's responsibility to notify us when a child ceases to meet the above conditions.

For both individual and family policies, the Policyowner may be able to add a spouse or child to this policy. To do so we must receive: (1) an application for the person; (2) evidence satisfactory to us that the person is eligible and insurable; and, (3) payment of any additional premium. If the application is approved, we will notify the Policyowner of the date the added person's insurance becomes effective.

If this is a family policy, the Policyowner's newborn children are insured from the moment of live birth; no notice or additional premium is required. For newborns, we will pay benefits for the necessary care or treatment of medically diagnosed congenital defects, birth abnormalities, or prematurity, if any of these are caused by a disease or condition for which benefits are payable under this policy. Benefits are not payable for normal, newborn child care.

**CANCER** Means a disease which expresses itself as:

- a malignant tumor characterized by the uncontrolled growth and spread of malignant cells and the invasion of body tissues by such malignant cells;
- leukemia; or,
- Hodgkin's disease.

Cancer does not include premalignant conditions, conditions with malignant potential, or pre-leukemic conditions.

**DEFINITIVE CANCER TREATMENT** Means proven medical techniques which destroy cancer or slow or stop the spread of cancer. We consider a technique to be proven which at the time of treatment:

- Is fully or investigationally approved for the treatment of cancer by the U.S. Food and Drug Administration; or,
- Is a generally accepted medical or surgical technique as determined by an oncologist chosen by the Company.

The American Cancer Society maintains information on some unproven methods of cancer treatment.

**COVERED CANCER TREATMENT**

Means treatment for which benefits are payable under this policy, including definitive cancer treatment.

**DOCTOR OR PHYSICIAN**

Means a person other than you or your spouse, parent, child, grandparent, grandchild, brother, sister, aunt, uncle, nephew or niece who:
- is licensed by the state to practice a healing art;
- performs services which are allowed by that license; and,
- performs services for which benefits are provided by this policy.

**HOSPICE**

Means an organization which:
- is licensed by a government agency;
- provides palliative and supportive care to terminally ill persons and their families;
- provides this care in the home or on an outpatient or short-term inpatient basis; and,
- is classified as a hospice.

A hospice is not:
- a hospital;
- a skilled nursing facility;
- a nursing home;
- an extended care facility;
- a convalescent home;
- a rest home or a home for the aged;
- a sanatorium;
- a rehabilitation center;
- a place for the treatment of substance abuse; or,
- a facility for the care and treatment of mental disease or mental disorders.

**HOSPITAL**

Means a medical facility which:
- is legally licensed and operated as an acute-care hospital;
- provides overnight care of injured and sick people;
- is supervised by a doctor;
- provides 24-hour-a-day nursing services supervised by or under a registered nurse; and,
- provides on-site or prearranged use of x-ray equipment, laboratory and surgical facilities.

A hospital is not a bed, unit or a facility that functions as:
- a hospice;
- a skilled nursing facility;
- a nursing home;
- an extended care facility;
- a convalescent home;
- a rest home or a home for the aged;
- a sanatorium;
- a rehabilitation center;
- a place for the treatment of substance abuse; or,
- a facility for the care and treatment of mental disease or mental disorders.

**PATHOLOGIST**

Means a doctor licensed to practice medicine and certified by the American Board of Pathology or the American Osteopathic College of Pathologists to practice pathological anatomy.

**SKILLED NURSING FACILITY**

Means a medical facility which:
- is legally licensed and operated as a skilled nursing facility;
- provides skilled nursing care in addition to room and board accommodations;
- is supervised by a doctor;
- provides 24-hour-a-day nursing services supervised by or under a registered nurse; and,
- maintains permanent medical history records.

A skilled nursing facility is not a bed, unit or facility that functions as:
- a hospice;
- a rest home or a home for the aged;
- a sanatorium;
- a place for the treatment of substance abuse;
- a facility used for the care and treatment of mental disease or mental disorders; or,
- a place for custodial or educational care.

**PERIOD OF CONFINEMENT**

Means a period which begins on or after the Effective Date, and during which you are confined as an inpatient to a hospital, U.S. Government hospital, or skilled nursing facility. If you are reconfined within 30 days of discharge, then the later period will be

considered a continuation of the prior period of confinement. If you are reconfined more than 30 days later, we will treat the later confinement as a new confinement.

**U.S. GOVERNMENT HOSPITAL**

Means a hospital which:
- is operated by or for the United States Government; and,
- does not charge you prevailing market rates for its room, board and medical services. "Prevailing market rates" means fees for services that equal, exceed or are reasonably related to all costs incurred by a hospital in providing such services.

**ANNIVERSARY DATE** Means the annual occurrence of the Effective Date shown in the Policy Schedule.

**DAY** Means a 24-hour period.

**LOSS** Means a specified event for which we pay benefits under this policy.

**ACTUAL CHARGES** Means the amount you are charged but not more than an amount, as determined by us, equal to the usual and prevailing charges being made by other providers for like products or services in the general geographic area where you are charged.

**PREMIUM** Means the amount of money you are required to pay us in return for the insurance provided by this policy.

**SPECIFIED EVENT** Means an event, such as a day of hospital confinement due to cancer, that occurs while this policy is in force and while all eligibility requirements are met.

## SECTION 2: ELIGIBILITY FOR BENEFITS

**DIAGNOSIS**

To be eligible for cancer benefits under this policy, your cancer must be diagnosed by pathological diagnosis, except as stated below:

Pathological Diagnosis

A pathological diagnosis of cancer is made from the results of a microscopic study of fixed tissue or blood samples. This type of diagnosis must be made by a pathologist certified by the American Board of Pathology or the American Osteopathic College of Pathologists. A pathological diagnosis of cancer can be made before or after death.

Clinical Diagnosis

A clinical diagnosis of cancer is based on the study of symptoms. We accept a clinical diagnosis only when a pathological diagnosis is detrimental to your health, when there is medical evidence to support the diagnosis, and when a doctor is treating you for cancer.

Other Diagnosis

We accept the pathological interpretation of the histology of skin lesions from dermatologists certified by the American Board of Dermapathology. In the case of lung cancer, we accept a cytology report in lieu of a pathology report.

**ELIGIBILITY**

You will be eligible for cancer benefits under this policy if:
- you have never had any cancer diagnosed prior to the date you become insured under this policy unless we have specifically waived or amended this requirement in an attached amendment or rider;
- your cancer is diagnosed while you are insured by this policy;
- you incur a loss due to your cancer while you are insured by this policy; and,
- the loss is not excluded by name or specific description in this policy.

The date of diagnosis is the earlier of the date of clinical diagnosis or the date the specimen used to diagnose cancer is taken.

We will not pay benefits for hospitalizations which begin prior to the date you become insured under this policy.

If cancer is first diagnosed while you are hospitalized, you will be eligible for benefits retroactively to the date you were admitted to the hospital. EXCEPTION: If skin cancer is diagnosed while you are hospitalized, you will be eligible for benefits only for the day(s) you actually received treatment for skin cancer.

## SECTION 3: BENEFITS

**OUR PROMISE TO PAY**

Subject to the terms, conditions, limitations and exclusions of this policy, we will pay the following benefits for loss due to cancer. This includes benefits for any condition which is caused by or results from cancer or the treatment of cancer.

Benefit amounts and some limitations are shown in the Benefit Schedule and Surgical and Anesthesia Schedule.

**EXPRESS PAYMENT BENEFIT**

We will pay the amount shown in the Benefit Schedule when you are diagnosed for the first time as having any internal cancer. We will pay this benefit even when cancer is not diagnosed until after death. We will pay this benefit only once for any insured person. We will not pay this benefit for skin cancer.

**HOSPITAL CONFINEMENT BENEFIT**

We will pay the amount shown in the Benefit Schedule for each day you are confined as an inpatient to a hospital, other than a U. S. Government hospital, due to cancer.

This benefit will be calculated based on the number of days the hospital charges you for room and board.

**U.S. GOVERNMENT HOSPITAL CONFINEMENT BENEFIT**

We will pay the amount shown in the Benefit Schedule for each day you are confined as an inpatient to a U.S. Government hospital due to cancer.

This benefit will be calculated based on the number of days you are confined. Separate confinements within 30 days of each other are considered the same period of confinement.

While this benefit is payable no other benefits will be payable except the Express Payment, Transportation, Family Member Transportation and Family Member Lodging benefits.

**INPATIENT DRUGS AND DIAGNOSTIC TESTING BENEFIT**

We will pay this benefit for drugs administered to you while you are confined as an inpatient in a hospital due to cancer. Such drugs, at the time of administration, must be approved by the U.S. Food and Drug Administration. This benefit also includes diagnostic and laboratory tests and x-rays necessary for the diagnosis and treatment of cancer which are administered while you are an inpatient in a hospital.

We will pay the actual charges made by the hospital up to the daily limit shown in the Benefit Schedule for each day you receive drugs or diagnostic tests while confined as an inpatient, up to the number of days for which you receive benefits under this policy's Hospital Confinement Benefit. This benefit is not payable for drugs which are paid under the Radiation/Chemotherapy Benefit.

**INPATIENT ATTENDING PHYSICIAN BENEFIT**

We will pay this benefit if you use the services of an attending physician while you are confined as an inpatient in a hospital due to cancer. An attending physician is a doctor, other than your surgeon, who performs cancer treatment services for you while you are confined and charges you for those services.

We will pay the amount shown in the Benefit Schedule for each day you receive such services, up to the number of days for which you receive benefits under this policy's Hospital Confinement Benefit.

**INPATIENT PRIVATE NURSE BENEFIT**

We will pay this benefit if you use the full-time services of a private nurse while you are confined as an inpatient in a hospital due to cancer. Full-time means at least eight hours' attendance during any 24-hour period. These services must be prescribed by your doctor for the treatment of cancer and must be performed by a licensed nurse. Private nursing services must be other than those regularly furnished by the hospital. We will not pay this benefit if the private nurse is you or your spouse, parent, child, grandparent, grandchild, brother, sister, aunt, uncle, nephew or niece.

We will pay the amount shown in the Benefit Schedule for each day you receive such services, up to the number of days for which you receive benefits under this policy's Hospital Confinement Benefit.

**AMBULANCE/AIR AMBULANCE BENEFIT**

We will pay this benefit if a licensed surface or air ambulance service transports you to or from a hospital, to which you are confined as an inpatient due to cancer.

We will pay actual charges up to the amount shown in the Benefit Schedule. This benefit is limited to two one-way trips per period of confinement. Separate confinements within 30 days of each other are considered the same period of confinement.

**RADIATION/CHEMOTHERAPY BENEFIT**

We will pay this benefit if your physician prescribes radiation or chemical treatments as part of your definitive cancer treatment. These treatments must be for the purpose of modification or destruction of cancer and are limited to:

- cancericidal chemical substances;
- x-ray radiation;
- radium and cesium implants; and,
- cobalt.

At the time of administration these treatments must be fully or investigationally approved for the treatment of cancer by the U.S. Food and Drug Administration. These treatments may be performed on an outpatient or inpatient basis.

We will pay actual daily charges for each day you receive and incur a charge for these treatments up to the daily limit shown in the Benefit Schedule.

We will not pay for any treatment planning, treatment management, or any type of laboratory tests, x-ray or other imaging used for diagnosis or disease monitoring, or other diagnostic tests related to these treatments. We will not pay for any devices or supplies such as intravenous solutions and needles related to these treatments.

**SURGICAL PROCEDURE BENEFIT**

We will pay this benefit for your cancer surgery performed by a doctor which definitely diagnoses or treats cancer. We will not pay for reconstructive surgery except for reconstructive breast surgery following a mastectomy for which we paid a Surgical Procedure Benefit under this policy.

We will pay the amount shown in the Surgical and Anesthesia Schedule for the surgical procedure performed. For reconstructive breast surgery, we will pay actual charges up to the Surgical Procedure Benefit we paid for the mastectomy. We will pay the amount shown in the Surgical and Anesthesia Schedule for surgical biopsies resulting in a pathological diagnosis of cancer.

If you have more than one surgical procedure performed at the same time through the same incision, we will pay only for the one surgical procedure performed for which the largest benefit amount in the Surgical and Anesthesia Schedule is payable.

If you have a surgical procedure performed which is not shown in the Surgical and Anesthesia Schedule, we will pay a benefit amount based on the difficulty of the procedure as compared to the difficulty of the procedures shown. Regardless of the difficulty of the procedure, we will pay no less than the smallest and no more than the largest amount shown in the Surgical and Anesthesia Schedule for any surgical procedure.

**SECOND AND THIRD SURGICAL OPINION BENEFIT**

We will pay this benefit if surgery is recommended due to the diagnosis of cancer and you choose to obtain the opinion of a second physician. If the second opinion fails to confirm the need for the recommended surgery, we will pay for a third physician's opinion. An insured is not required to obtain a second or third opinion in order to receive the surgical or other benefits under this policy. Second or third opinions must be rendered before surgery is performed. The physicians rendering such opinions must not be in practice with or otherwise affiliated with each other.

We will pay actual charges for such opinions up to the amount shown in the Benefit Schedule. This benefit is not payable for second or third opinions related to skin cancer treatment.

**ANESTHESIA BENEFIT**

We will pay this benefit if you receive anesthesia during cancer surgery for which a Surgical Procedure Benefit is payable.

We will pay the amount shown in the Surgical and Anesthesia Schedule for the surgical procedure performed during which anesthesia was administered. We will pay the amount shown in the Surgical and Anesthesia Schedule for anesthesia administered during a surgical biopsy resulting in a pathological diagnosis of cancer.

If you have more than one cancer surgical procedure performed at the same time, we will pay an Anesthesia Benefit only for the one surgical procedure performed for which the largest benefit amount is payable. If anesthesia is administered during a cancer surgical procedure that is not listed in the Surgical and Anesthesia Schedule, we will pay an Anesthesia Benefit amount equal to 25% of the amount of the Surgical Procedure Benefit we pay for such surgery. We will pay no less than the smallest and no more than the largest Anesthesia Benefit amount shown in the Surgical and Anesthesia Schedule.

**BLOOD AND PLASMA BENEFIT**

We will pay the amount shown in the Benefit Schedule for each day you receive whole blood, plasma, red cells, packed cells or platelets as a result of cancer or definitive cancer treatment.

**SKILLED NURSING FACILITY BENEFIT**

We will pay this benefit if you are confined due to cancer, by doctor's order, to a skilled

nursing facility within 14 days after you are discharged from a hospital where you were confined due to cancer.

We will pay the amount shown in the Benefit Schedule for each day you are so confined. We will pay this benefit for no more than the number of days for which we paid the Hospital Confinement or U.S. Government Hospital Confinement benefit under this policy for the period of hospital confinement which immediately preceded the skilled nursing facility confinement.

**HOSPICE BENEFIT**

We will pay this benefit for each day you receive care provided by or through a hospice due to your cancer. You must be diagnosed as terminally ill, no longer be receiving definitive cancer treatment and be expected to live six months or less.

We will pay actual charges up to the daily limit shown in the Benefit Schedule for each day you:

- receive hospice services at your home;
- use the services of a hospital or a U.S. Government hospital on an outpatient basis under the direction of a hospice; or,
- visit or are confined to a hospice for treatment or services.

We will not pay this benefit for any day you are confined to a hospital, a U.S. Government hospital, or a skilled nursing facility.

**TRANSPORTATION BENEFIT**

We will pay this benefit if you must travel within the continental U.S. more than 100 miles one-way from your home to receive covered cancer treatments.

We will pay actual charges up to the amount shown in the Benefit Schedule for your coach class plane, train or bus fare on a regularly scheduled route. We will not pay the cost to charter a plane, train or bus. If you choose instead to travel by car, we will pay the amount shown in the Benefit Schedule for each mile you travel. We will measure the mileage from where you live to your destination by using a road atlas to establish and pay for the most direct route.

This benefit has no limit to the number of trips.

**FAMILY MEMBER TRANSPORTATION BENEFIT**

You are eligible for this benefit while you are confined as an inpatient to a hospital within the continental U.S. more than 100 miles one-way from your home to receive covered cancer treatments.

If a family member needs transportation to or from the hospital where you are confined and the hospital is more than 100 miles one-way from the family member's home, we will pay actual charges up to the amount shown in the Benefit Schedule for the family member's coach class plane, train or bus fare on a regularly scheduled route. We will not pay the cost to charter a plane, train or bus. "Family member" means a spouse, parent, brother, sister, or child of the person receiving treatment.

This benefit is limited to two one-way trips within the U.S. (including Puerto Rico) per period of confinement. Separate confinements within 30 days of each other are considered the same period of confinement. These trips may be taken by the same family member or may be split between two family members.

**FAMILY MEMBER LODGING BENEFIT**

You are eligible for this benefit while you are confined as an inpatient to a hospital within the continental U.S. more than 100 miles one-way from your home to receive covered cancer treatments.

If a family member accompanies you and needs lodging while you are confined to a hospital which is more than 100 miles one-way from the family member's home, we will pay the actual charge for lodging made by a hotel or motel, up to the amount shown in the Benefit Schedule. "Family member" means a spouse, parent, brother, sister, or child of the person receiving treatment. This benefit is limited to payment for one room for each day of your confinement up to a maximum of 60 days for each period of confinement during which the Hospital or U.S. Government Hospital Confinement Benefit is payable under this policy. Separate confinements within 30 days of each other are considered the same period of confinement.

**PROSTHESIS BENEFIT**

We will pay this benefit for prosthetic devices needed due to your cancer surgery for which you receive benefits under this policy.

We will pay actual charges up to the amount shown in the Benefit Schedule. The amount listed is the maximum payable per device for each person insured by this policy. Devices must be obtained within three years of the date of the cancer surgery. We will not pay for related supplies such as special bras or ostomy pouches. We will not pay for wigs or hairpieces.

**LEUKEMIA BONE MARROW TRANSPLANT BENEFIT**

We will pay the amount shown in the Benefit Schedule if, due to leukemia, you receive a human bone marrow transplant.

A human bone marrow transplant is an allogenelc or syngeneic graft of living bone marrow from one human being to another. We will not pay this benefit for autologous bone marrow transplants or for the implantation of artificial or synthetic bone marrow.

This benefit is the sum of two amounts:

- the initial amount shown in the Benefit Schedule; and,
- the inflation fighter amount shown in the Benefit Schedule multiplied by the number of complete years (maximum of ten) you have been insured under this policy as of the date of your transplant.

We will pay this benefit no more than once for any insured person.

## SECTION 4: RETURN OF PREMIUM

**RETURN OF PREMIUM BENEFIT**

We will pay this benefit if the policy is kept in force until a Maturity Date. The Return of Premium Benefit is equal to the premiums paid for the insurance provided under the policy during the Return of Premium Period. The policy need not be surrendered at a Maturity Date to receive a Return of Premium Benefit.

After each Maturity Date, a new Return of Premium Period will begin automatically.

**RETURN OF PREMIUM PERIOD**

Means the period of time from the Effective Date to the first Maturity Date, or from any Maturity Date to the next.

Based on the Policyowner's age at the beginning of a Return of Premium Period, the length of the period will be as follows:

- BEGINNING AT AGE 55 OR UNDER: 20 years.
- BEGINNING AT AGE 56 THROUGH 64: The number of years from the beginning of the Return of Premium Period to the first anniversary date after the policyowner reaches age 75.
- BEGINNING AT AGE 65 OR OVER: 10 years.

**MATURITY DATE**

Means the date on which a Return of Premium Period ends and eligibility for a Return of Premium Benefit occurs.

**TERMINATIONS AND REINSTATEMENT**

If the policy terminates and it is later reinstated, then all Maturity Dates will be deferred by the period of time that the policy was inactive.

EXCEPTION: If a Maturity Date occurs on the Anniversary Date after the Policyowner reaches age 75, we will not defer that Maturity Date.

**CONTINUATION PRIVILEGE**

If the Policyowner's spouse is insured under the policy and the Policyowner dies, all Maturity Dates will continue to be based on the Policyowner's age. The Return of Premium Benefit will be paid to the spouse.

**BENEFIT ASSIGNMENT NOT ALLOWED**

The Return of Premium Benefit may not be assigned.

## SECTION 5: LIMITATIONS AND EXCLUSIONS

**CANCER POLICY ONLY**

This policy provides benefits only as stated in Section 3, Our Promise to Pay. This policy does not provide benefits for any other disease or condition even if the disease or condition was complicated or aggravated by, but not caused by, cancer or cancer treatment.

Benefits paid for any one person shall not exceed the maximum benefits shown in the Benefit Schedule regardless of the number of cancers. Proof must be submitted to support each claim.

## SECTION 6: GENERAL PROVISIONS

**ENTIRE CONTRACT**

The entire contract of insurance consists of:

- the Policy Schedule;
- the policy, including the Benefit Schedule and Surgical and Anesthesia Schedule;

- any attached riders, amendments or endorsements; and,
- all applications.

**CONTRACT CHANGES**

No change to this policy is valid unless it is in writing, endorsed by one of our officers, and attached to this policy. No one else has the authority to change this policy or to waive any of its provisions.

**TERM**

The first term begins at 12:00 noon (Eastern Standard Time) on the Effective Date shown in your Policy Schedule, but insurance will not be effective prior to the time the application is signed by the applicant. The first term ends at 12:00 noon (Eastern Standard Time) on the first renewal date. Each renewal term begins at 12:00 noon (Eastern Standard Time) on the date the previous term ends. Each renewal term ends at 12:00 noon (Eastern Standard Time) on the date to which premium is paid. Renewal dates are determined by your mode of payment. Your initial mode of payment is shown in the Policy Schedule.

**PREMIUMS**

The first premium is due on the Effective Date. Each premium after the first is due on the last day of the term for which the most recent premium was paid and must be received by us at our Administrative Office.

This policy will not be in force until your application is approved and the first premium is accepted by us. If we accept subsequent premium, this policy will continue in force until the end of the term for which that premium was due.

The amount of the first premium is shown in the Policy Schedule and is based on your initial mode of payment. The amount of each premium after the first is based on your then current mode of payment and the premium then being charged for policies of this form number and premium classification issued in the same state.

**GRACE PERIOD**

After the first premium, if you do not pay a premium when it is due, you can pay it during the next 31 days. These 31 days are called the grace period. During this period the policy will stay in force; however, this policy terminates at 12:00 noon (Eastern Standard Time) on the due date of the unpaid premium if you do not pay the premium by the end of the grace period. Termination will not prejudice a claim for loss incurred prior to the due date of the unpaid premium.

**REINSTATEMENT**

If this policy terminates because the premium is not paid by the end of the grace period, the Policyowner may be able to put the insurance back in force.

If we accept your premium and do not require a reinstatement application, this policy will be reinstated as of 12:00 noon (Eastern Standard Time) on the date we receive the premium. If we require a reinstatement application at the time we accept the premium, we will issue a conditional receipt for the premium. Upon our receipt and approval of the reinstatement application, this policy will be reinstated as of 12:00 noon (Eastern Standard Time) on the date the reinstatement application is approved. If we do not mail written notice of disapproval within 45 days after the date of the conditional receipt, then this policy will automatically be reinstated as of 12:00 noon (Eastern Standard Time) on the 45th day.

Any premium accepted in connection with a reinstatement will be applied to a period for which premium has not previously been paid. This period will not exceed 60 days prior to the date of reinstatement.

The reinstated policy will provide benefits only for loss resulting from cancer which starts more than 10 days after the reinstatement date.

We reserve the right to make changes in this policy before we reinstate it. Any changes will be noted on or attached to the reinstated policy. In every other way, your rights and our rights will be the same as existed immediately prior to termination.

**CONTINUATION**

If this is a family policy and the Policyowner dies, the spouse, if insured, may elect to continue insurance for the insured persons. A written request for continuation and the appropriate premium must be sent to us within 60 days of the Policyowner's death.

**CONVERSION**

If this is a family policy, and the spouse would lose insurance due to Policyowner request, or a child would lose insurance because of marriage, attainment of the limiting age or the Policyowner's death, then the spouse and/or child may convert to a separate policy by sending us a written request for conversion, along with the appropriate premium, within 31 days after the date insurance would otherwise end. We will issue, without evidence of insurability, an equal policy or, at the insured person's option, any other similar individual policy, then being issued by us, which contains equal or lesser benefits. The converted insurance, however, will be limited by any exclusions which applied under this policy. Additionally, any benefit amounts paid for a person under this policy will be applied to benefit limits under that person's converted policy.

**MISSTATEMENTS OF AGE**

If any age or date of birth is misstated in the application, the benefits will be such as the premium paid would have purchased at the correct ages. If based on the correct

ages we would not have issued this policy or insured certain members of the Policyowner's family under this policy, then our only responsibility will be to refund any excess premium paid.

**TIME LIMIT ON CERTAIN DEFENSES**

We rely on the statements made in the application when issuing this insurance. After this insurance has been in force for you for two years, we cannot cancel it or refuse to pay benefits for losses commencing after such time because of any misstatements in the application unless the applicant knowingly made them.

**PRE-EXISTING CONDITION LIMITATIONS**

No claim for loss incurred after two years from the date you become insured under this policy will be reduced or denied because a disease or physical condition, not excluded by name or specific description before the date of loss, had existed before the effective date of your insurance, subject to SECTION 2, ELIGIBILITY FOR BENEFITS.

**CONFORMITY WITH STATE STATUTES**

Any provision of this policy which, on the Effective Date, is in conflict with the laws of the state in which your policy was issued is amended to conform to the minimum requirements of those laws.

## SECTION 7: CLAIM PROVISIONS

**NOTICE OF CLAIM**

Written notice of claim must be given to us within 60 days after the start of a loss or as soon as reasonably possible thereafter. The notice must be sent to us at our Administrative Office or to an authorized agent. The notice should include your name and policy account number.

**CLAIM FORMS**

When we receive notice of a claim, we will send forms for filing proof of loss. If we do not send these forms within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss within the time stated in the Proofs of Loss section.

**PROOFS OF LOSS**

You must give us written proof satisfactory to us within 90 days after the loss for which you are seeking benefits. If it is not reasonably possible to give written proof in the time required, we will not reduce or deny benefits for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than one year from the date of loss, unless the Policyowner was legally incapacitated during that time.

If the policy provides for periodic payments for continuing loss, written proof of loss must be given to us within 90 days after the end of each period for which we are liable.

One or more of the following together with your written statement may, at our sole discretion, be required as proof of loss:
- completed Company claim forms;
- adoption papers, birth, marriage, and death certificates;
- a pathologist's report;
- a physician's statement;
- itemized bills for services rendered;
- hospital, medical and physician records;
- medical and pharmaceutical receipts;
- transportation and lodging receipts; and,
- other documentation.

**TIME OF PAYMENT OF CLAIMS**

After we receive written proof of loss and process your claim, we will pay monthly all benefits then due for claims providing a periodic payment. Benefits for any other loss for which benefits are payable under this policy will be paid when we receive written proof satisfactory to us.

**PAYMENT OF CLAIMS**

Benefits will be paid to the Policyowner. We will not be bound by any assignment of benefits form unless we have given our prior consent or are required by law. Any benefits unpaid at the time of the Policyowner's death will be paid in the following order: any approved assignee, the surviving person married to the Policyowner at the Policyowner's death, or the Policyowner's estate.

**UNPAID PREMIUM**

When a claim is paid, any premium due and unpaid may, at our sole discretion, be deducted from the claim payment.

**PHYSICAL EXAMINATION AND AUTOPSY**

We have the right to have you examined as often as reasonably necessary while a claim is pending. We can require an autopsy where allowed by law. Either will be done at our expense.

**LEGAL ACTION**

You cannot take legal action against us for benefits under this policy:

- within 60 days after you have sent us written proof of loss; or,
- more than three years from the time written proof is required to be given.

## SECTION 8: BENEFIT SCHEDULE

This is a summary of benefits. Please read your entire policy or certificate for further explanations and limitations.

| | |
|---|---|
| Express Payment | $1,000 |
| Hospital Confinement | $200/day |
| U.S. Government Hospital Confinement | $200/day |
| Inpatient Drugs and Diagnostic Testing | Actual Charges up to $25/day |
| Inpatient Attending Physician | $25/day |
| Inpatient Private Nurse | $80/day |
| Ambulance/Air Ambulance | Actual Charges up to $167/one-way trip |
| Radiation/Chemotherapy | Actual Charges up to $200/day |
| Surgical Procedure | See attached Surgical and Anesthesia Schedule |
| Second and Third Surgical Opinion | Actual Charges up to $100/opinion |
| Anesthesia | See attached Surgical and Anesthesia Schedule |
| Blood and Plasma | $100/day |
| Skilled Nursing Facility | $80/day |
| Hospice | Actual Charges up to $60/day |
| Transportation | Actual Charges up to $667/one-way trip for plane, train or bus; or $0.20/mile by car |
| Family Member Transportation | Actual Charges up to $667/one-way trip for plane, train or bus |
| Family Member Lodging | Actual Charges up to $33.50/day |
| Prosthesis | Actual Charges up to $1,334/device |
| Leukemia Bone Marrow Transplant | Initial Amount: $25,000<br>Inflation Fighter Amount: $2,500 |

**(2/3 UNIT)**

SECTION 9: SURGICAL and ANESTHESIA SCHEDULE (2/3 UNIT)

If you have a surgical procedure performed which is not shown in this Surgical and Anesthesia Schedule, we will pay a benefit amount based on the difficulty of the procedure as compared to the difficulty of the procedures shown.

| SURGICAL PROCEDURE | PROCEDURE CODE | SURGICAL BENEFIT | ANESTHESIA BENEFIT |
|---|---|---|---|
| ABDOMEN | | | |
| Abdominal paracentesis | 49080 | $60 | $15 |
| Excision of intra-abdominal or retroperitoneal tumor | 49200 | $420 | $105 |
| Staging celiotomy (Hodgkin's or Lymphoma) | 49220 | $660 | $165 |
| BLADDER | | | |
| Cystotomy for excision of bladder tumor | 51530 | $450 | $113 |
| Cystectomy, complete; with bilateral pelvic lymphadenectomy | 51575 | $1,541 | $385 |
| Cystectomy, complete; with ureterolleal conduit or sigmoid bladder, including bowel anastomosis | 51590 | $2,158 | $540 |
| with bilateral pelvic lymphadenectomy, including external iliac, hypogastric and obturator nodes | 51595 | $2,740 | $685 |
| Pelvic exenteration, complete, for vesical, prostatic or urethral malignancy, with removal of bladder and ureteral transplantation | 51597 | $2,301 | $575 |
| Cystourethroscopy with biopsy | 52204 | $90 | $23 |
| Cystourethroscopy, with fulguration and/or resection of medium tumor(s) (2.0 - 5.0 cm) | 52235 | $360 | $90 |
| BONE | | | |
| Biopsy, bone, trocar or needle; superficial | 20220 | $60 | $15 |
| Radical resection of sternum for tumor with mediastinal lymphadenectomy | 21632 | $1,918 | $480 |
| BRAIN | | | |
| Craniectomy for tumor of skull | 61500 | $1,479 | $370 |
| Excision brain tumor, supratentorial | 61510 | $1,918 | $480 |
| Excision brain tumor, infratentorial or posterior fossa | 61518 | $2,110 | $528 |
| Cerebellopontine angle tumor | 61520 | $2,740 | $685 |
| Midline tumor at base of skull | 61521 | $4,112 | $1,028 |
| Excision of craniopharyngioma | 61545 | $5,000 | $1,250 |
| Hypophysectomy, intracranial approach | 61546 | $2,038 | $510 |
| BREAST | | | |
| Biopsy of breast, incisional (separate procedure) | 19101 | $105 | $26 |
| Excision of malignant tumor | 19120 | $150 | $38 |
| Mastectomy, partial | 19160 | $180 | $45 |
| Mastectomy, simple, complete | 19180 | $312 | $78 |
| Mastectomy, radical including pectoral muscles, axillary and internal mammary lymph nodes | 19220 | $780 | $195 |
| Mastectomy, modified radical, including axillary lymph nodes and pectoralis minor muscle, but excluding pectoralis major muscle | 19240 | $570 | $143 |
| Excision of chest wall tumor involving ribs, with plastic reconstruction; with mediastinal lymphadenectomy | 19272 | $1,438 | $360 |
| CHEST | | | |
| Bronchoscopy with biopsy | 31625 | $174 | $44 |
| Thoracentesis for biopsy | 32000 | $60 | $15 |
| Biopsy, lung or mediastinum, percutaneous needle | 32405 | $105 | $26 |
| Pneumonectomy, total | 32440 | $1,027 | $257 |
| Lobectomy, total or segmental | 32480 | $810 | $203 |
| Excision of mediastinal tumor | 39220 | $546 | $137 |

## SURGICAL and ANESTHESIA SCHEDULE
(2/3 UNIT)

| SURGICAL PROCEDURE | PROCEDURE CODE | SURGICAL BENEFIT | ANESTHESIA BENEFIT |
|---|---|---|---|
| EAR | | | |
| Excision, external ear, partial | 69110 | $180 | $45 |
| Radical excision, external auditory canal lesion with neck dissection | 69155 | $705 | $176 |
| Excision aural glomus tumor; transcanal | 69550 | $618 | $155 |
| Transmastoid | 69552 | $1,058 | $265 |
| Extended (extratemporal) | 69554 | $1,975 | $494 |
| ESOPHAGUS | | | |
| Excision local lesion with primary repair; cervical approach | 43100 | $450 | $113 |
| Thoracic approach | 43101 | $660 | $165 |
| Wide excision of malignant lesion of cervical esophagus | 43105 | $720 | $180 |
| With radical neck dissection | 43106 | $1,096 | $274 |
| Esophagectomy (at upper two-thirds level) and gastric anastomosis with vagotomy | 43110 | $840 | $210 |
| Esophagogastrectomy (lower third) and vagotomy, combined thoracicoabdominal | 43120 | $1,041 | $260 |
| EYE | | | |
| Enucleation of eye | 65101 | $375 | $94 |
| Exenteration of orbit | 65110 | $600 | $150 |
| Orbitotomy with removal of lesion | 67412 | $600 | $150 |
| HEART | | | |
| Pericardiectomy | 33100 | $1,096 | $274 |
| Excision intracardiac tumor, resection with bypass | 33120 | $2,740 | $685 |
| INTESTINES | | | |
| Colectomy, partial; with anastomosis | 44140 | $555 | $139 |
| With coloproctostomy | 44145 | $639 | $160 |
| Colectomy, total, abdominal with ileostomy or ileoproctostomy | 44150 | $750 | $188 |
| With rectal mucosectomy, ileoanal anastomosis | 44153 | $2,038 | $510 |
| With proctectomy | 44155 | $1,027 | $257 |
| Small intestine, enteroscopy beyond second portion of duodenum, with biopsy | 44361 | $156 | $39 |
| Proctectomy, complete, combined abdominoperineal | 45110 | $840 | $210 |
| Proctosigmoidoscopy with biopsy | 45305 | $60 | $15 |
| Colonoscopy, fiberoptic, beyond splenic flexure; with biopsy | 45380 | $225 | $56 |
| KIDNEY | | | |
| Renal biopsy | | | |
| Percutaneous, by trocar or needle | 50200 | $84 | $21 |
| By surgical exposure of kidney | 50205 | $240 | $60 |
| Nephrectomy, radical, with regional lymphadenectomy | 50230 | $1,113 | $278 |
| Partial | 50240 | $720 | $180 |
| LIVER | | | |
| Needle biopsy, percutaneous | 47000 | $60 | $15 |
| Wedge biopsy (independent procedure) | 47100 | $300 | $75 |
| Hepatectomy, partial lobectomy | 47120 | $870 | $218 |

## SURGICAL and ANESTHESIA SCHEDULE
## (2/3 UNIT)

| SURGICAL PROCEDURE | PROCEDURE CODE | SURGICAL BENEFIT | ANESTHESIA BENEFIT |
|---|---|---|---|
| LYMPHATIC SYSTEM | | | |
| Biopsy or excision of cervical lymph node; deep | 38510 | $102 | $26 |
| Cervical lymphadenectomy (complete) | 38720 | $630 | $158 |
| MOUTH | | | |
| Excision of lip; transverse wedge excision with primary closure | 40510 | $225 | $56 |
| Hemiglossectomy | 41130 | $330 | $83 |
| Glossectomy | | | |
| Partial, with unilateral radical neck dissection | 41135 | $660 | $165 |
| Total, with unilateral radical neck dissection | 41145 | $840 | $210 |
| With resection, floor of mouth, mandibular resection and radical neck dissection (commando type) | 41155 | $1,027 | $257 |
| Resection, palate | 42120 | $660 | $165 |
| OVARY | | | |
| Wedge resection or bisection | 58920 | $330 | $83 |
| PANCREAS | | | |
| Excisional biopsy (independent procedure) | 48100 | $450 | $113 |
| Pancreatectomy with pancreaticoduodenectomy and pancreaticojejunostomy | 48150 | $1,438 | $360 |
| PAROTID | | | |
| Excision parotid tumor, lateral lobe, without nerve dissection | 42410 | $186 | $47 |
| Total, with unilateral radical neck dissection | 42426 | $840 | $210 |
| PELVIS | | | |
| Radical resection for tumor | 27075 | $540 | $135 |
| Innominate bone (total) | 27077 | $2,158 | $540 |
| PENIS | | | |
| Amputation, partial | 54120 | $300 | $75 |
| Complete | 54125 | $600 | $150 |
| Radical with bilateral inguinofemoral lymphadenectomy | 54130 | $840 | $210 |
| PROSTATE | | | |
| Biopsy, needle or punch, single or multiple, any approach | 55700 | $60 | $15 |
| Transurethral resection of prostate | 52601 | $600 | $150 |
| Prostatectomy, retropubic radical; with bilateral pelvic lymphadenectomy, including external iliac, hypogastric and obturator nodes | 55845 | $1,438 | $360 |
| SINUS | | | |
| Maxillectomy with orbital exenteration | 31230 | $840 | $210 |
| SKIN | | | |
| Excision of malignant lesion; diameter 1.1 - 2.0 CM | | | |
| On trunk, arms or legs | 11602 | $69 | $17 |
| On scalp, neck, hands, feet or genitalia | 11622 | $108 | $27 |
| On face, ears, eyelids, nose or lips | 11642 | $150 | $38 |
| Destruction of malignant lesion; diameter 1.1 - 2.0 CM | | | |
| On trunk, arms or legs | 17262 | $69 | $17 |
| On scalp, neck, hands, feet or genitalia | 17272 | $75 | $19 |
| On face, ears, eyelids, nose or lips | 17282 | $87 | $22 |

## SURGICAL and ANESTHESIA SCHEDULE
(2/3 UNIT)

| SURGICAL PROCEDURE | PROCEDURE CODE | SURGICAL BENEFIT | ANESTHESIA BENEFIT |
|---|---|---|---|
| SPINE | | | |
| Resection tumor, radical, soft tissue of flank or back | 21935 | $450 | $113 |
| Partial resection of vertebral component for cervical tumor | 22105 | $360 | $90 |
| Biopsy of spinal cord, percutaneous needle | 62269 | $504 | $126 |
| Laminectomy for biopsy/excision of intraspinal neoplasm; | | | |
| Extradural, cervical | 63275 | $1,918 | $480 |
| Intradural, intramedullary, thoracic | 63286 | $2,740 | $685 |
| STOMACH | | | |
| Gastric biopsy by laparotomy | 43605 | $405 | $101 |
| Local excision of tumor | 43610 | $450 | $113 |
| Total gastrectomy including intestinal anastomosis | 43620 | $840 | $210 |
| Hemigastrectomy with vagotomy | 43635 | $690 | $173 |
| TESTIS | | | |
| Biopsy, incisional (independent procedure) | 54505 | $93 | $23 |
| Orchiectomy, radical, for tumor, inguinal approach | 54530 | $285 | $71 |
| With abdominal exploration | 54535 | $375 | $94 |
| THROAT | | | |
| Laryngectomy, total, without radical neck dissection | 31360 | $750 | $188 |
| With radical neck dissection | 31365 | $1,479 | $370 |
| Pharyngolaryngectomy with radical neck dissection | 31390 | $1,062 | $266 |
| Laryngoscopy, direct, operative, with biopsy. | 31535 | $180 | $45 |
| THYROID | | | |
| Thyroidectomy for malignancy | 60252 | $780 | $195 |
| With radical neck dissection | 60254 | $870 | $218 |
| UTERUS | | | |
| Colposcopy with biopsy | 57454 | $78 | $20 |
| Dilation and curettage with biopsy | 58120 | $120 | $30 |
| Radical abdominal hysterectomy, with bilateral total pelvic and limited para-aortic lymphadenectomy | 58210 | $1,438 | $360 |
| URINARY | | | |
| Ureterectomy, with bladder cuff (independent procedure) | 50650 | $600 | $150 |
| Total, ectopic ureter; combination abdominal, vaginal and/or perineal approach | 50660 | $840 | $210 |
| Ureteral endoscopy with biopsy | 50974 | $78 | $20 |
| VULVA | | | |
| Vulvectomy, complete | 56625 | $465 | $116 |
| Radical | 56630 | $660 | $165 |
| With inguinofemoral, iliac, and pelvic lymphadenectomy | 56640 | $1,130 | $283 |

02/13/2008 23:36 FAX 02

Application to: Conseco Health Insurance Company P.O. Box 1908, Carmel, Indiana 46082-1908

Is this a conversion of existing insurance? ☒ Yes ☐ No If so, existing policy account number: 7632103

| Applicant's Name (Please Print: First, Middle Initial, Last) | ☐ Male ☒ Female | Date of Birth | Age | Social Security Number |
|---|---|---|---|---|
| Sabra Seagraves | | 10/30/61 | 46 | 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 |
| Spouse's Name (If Family Policy Applied For) | ☒ Male ☐ Female | Date of Birth | Age | Phone Number |
| William E. Seagraves | | 12/27/62 | 45 | (918)839-4241 |

Children's Name(s) (Must Meet Policy Definition Requirements)

| Applicant's Address | Number and Street | City | County | State | Zip Code |
|---|---|---|---|---|---|
| 24143 Brazil Creek Loop | | Shady Point | Leflore | OK | 74956 |

| Cancer Aid | | ICU | | Mode of Payment | Premium | |
|---|---|---|---|---|---|---|
| | | | | | Alternative Care | $ -0- |
| ☐ 1/3 Unit | ☐ Individual | ☐ Rider | ☐ Policy | ☒ Monthly – Automatic Check Deduction | Cancer Aid | $ 56.40 |
| ☐ 1/2 Unit | ☒ Family | ☐ Individual | ☐ Family | | ICU | $ -0- |
| ☒ 2/3 Unit | | ☐ Individual w/ Children | | | Total Premium | $ 56.40 |
| ☐ 1 Unit | | ☐ $500 | ☐ $750 | | | |
| ☐ 1-1/3 Units | | ☐ $1000 | | ☐ Annual – Direct Bill | Amount Collected | $ 56.40 |

Please answer all questions and indicate below the insurance applied for. If you answer "yes" to any health question, the person(s) named in the section(s) will be partially or completely excluded from insurance by an Exclusion Rider to be signed by the applicant before we issue the policy.

☒ All Insurance

Have you or any other person listed in this application been treated for or diagnosed as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? ☐ Yes ☒ No

If "yes," indicate the name(s) of person(s): ____________

(Complete 7 on the Exclusion Rider)

**The person(s) named in this section will be totally excluded from all coverage under Intensive Care.**

Does this policy replace any insurance you now have with another company? ☐ Yes ☒ No

If yes, complete the "Notice to Applicant" form.

Kentucky Residents Fill out the below information:

If yes, name of insurer: ____________

Amount: ____________

Other Health Insurance currently in force:

Name of Company: ____________

Amount of Insurance: ____________

☒ Cancer

Has anyone applying for insurance under this policy ever had, been diagnosed with or treated for cancer in any form? ☐ Yes ☒ No

If "yes," check the type of cancer and indicate the name(s) of person(s):

☐ non-melanoma skin cancer.
Name(s) of person(s): ____________
(complete 1 on the Exclusion Rider)

☐ any melanoma cancer.
Name(s) of person(s): ____________
(complete 2 on the Exclusion Rider)

☐ non-melanoma internal cancer.
Name(s) of person(s): ____________
If "non-melanoma internal cancer," has the named person, within the last 10 years, had any treatment for, diagnosis of, or recurrence of any internal cancer?
☐ Yes (complete 3 on the Exclusion Rider)
☐ No (complete 4 on the Exclusion Rider and submit a Cancer Treatment History form)

Within the last ten years, has anyone applying for insurance under this policy had, been diagnosed with or treated for a pre-leukemic condition, a pre-malignant condition or a condition with malignant potential? ☐ Yes ☒ No

If "yes," indicate the name(s) of person(s): ____________

(Complete 5 on the Exclusion Rider)

CX000/AA3OK-D

FEB 13 2008
RECEIVED

| ☐ Intensive Care | Has anyone to be insured ever been treated for or diagnosed as having a heart attack, heart condition or any abnormality of the heart? If "yes," indicate the name(s) of person(s):_____ (Complete 5 on the Exclusion Rider) | ☐ Yes ☐ No |
|---|---|---|

| Do you give the company permission for marketing purposes to tell others that you have applied for or purchased a Conseco Health policy? ☐ Yes ☐ No | Special Instructions: |
|---|---|

**Applicant's Statement:** I have read or have had read to me, the completed application: all representations are true an complete to the best of my knowledge and belief. I understand that: any false statements or misrepresentations in thi application may result in loss of insurance, (In North Carolina, during the first two years). The agent has no authority to approv the application, change the policy or waive any policy provisions. For ages 65 and above, I have received the booklet containin insurance advice for people eligible for Medicare. No insurance will be effective until the date stated in my policy and until ; eligibility requirements are met.

Authorization: I hereby authorize any legally licensed physician, medical practitioner, hospital, clinic or other medical i medically related facility, insurance company, the Medical Information Bureau, or other organization, institution or person, th. has any medical or non-medical record or knowledge of me, or any members of my family for whom application has been mad to give the Company any such information. A photographic copy of this authorization shall be as valid as the original.

I understand and agree that this policy may include an administrative remedies provision. The provision provides for mediatio depending on applicable state and federal laws.

**OK RESIDENTS:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for th proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

Date: 2/12/08 Signature of Applicant: X Sabra Seagraves Signed In: Shady Point, ok
City, State

**This Section to be Completed by Agent:** I hereby certify that I have explained to the applicant all exceptions and limitatio pertaining to the insurance applied for, including any concerning pre-existing conditions. I hereby certify that I have truthfully ar accurately recorded in this application the information supplied by the applicant. I further certify that I am a licensed agent in th state where this application was signed by the applicant.

Signature of Agent: [signature] Date: 2/12/08 Agency: PMA Agent #: 62401

*CONSECO HEALTH INSURANCE COMPANY*
*Home Office: Phoenix, AZ*
*Administrative Office: 11815 N. Pennsylvania Street*
*Carmel, IN 46032-4555 • Telephone: 1-800-541-1223*

# CONVERSION AMENDMENT

| Applicant's Name (First, MI, Last) | Social Security Number | Account Number |
|---|---|---|
| Sabra Szczyklo[illegible] | 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 | 2632103 |

You are applying to convert Existing Insurance. If your application is approved by us, we will issue new policy forms, as applicable, which describe the new, Converted Insurance. As of the Effective Date of the Converted Insurance, the new forms replace and supersede all existing forms except as noted below. This amendment modifies the new forms by adding the following:

- **DEFINITIONS**

**Existing Insurance:** Your insurance policy and level of benefits as it exists immediately prior to any conversion to the level of benefits for which you are making application.

**Converted Insurance:** The new insurance policy and level of benefits for which you are making application.

**Existing Return of Premium Benefit:** The return of premium benefit, if any, in force with your Existing Insurance.

**Converted Return of Premium Benefit:** The return of premium benefit contained in your Converted Insurance.

**Claims Incurred:** Claims are considered incurred on the date an event for which we pay benefits occurs or, in the case of a continuing claim, an earlier date as determined by the company based on a related prior event.

**Original Maturity Date:** The next date on which you would become entitled to a return of premium benefit under the terms of your Existing Return of Premium Benefit if that benefit were to remain in force until that date.

**Accumulated Return of Premium Benefit Under Existing Cancer Insurance ("Accumulated Cancer Benefit"):** The portion of premiums paid for existing cancer insurance prior to the Effective Date of the converted cancer insurance that would have been returned by the Existing Return of Premium Benefit on the Original Maturity Date, less cancer Claims Incurred prior to the Effective Date of the converted cancer insurance.

**Accumulated Return of Premium Benefit Under Existing Hospital Intensive Care Insurance ("Accumulated ICU Benefit"):** The portion of premiums paid for any existing hospital intensive care insurance prior to the Effective Date of Converted Insurance that would have been returned by the existing Return of Premium on the Original Maturity Date, less hospital intensive care Claims Incurred prior to the Effective Date of the converted hospital intensive care insurance.

**Accumulated Benefit Payment Date:** The earlier of the Original Maturity Date and the date we receive written proof of the Policyowner being diagnosed for the first time as having any internal cancer (not skin cancer).

- **CANCER POLICY**

**Eligibility:** The converted level of benefits has a 30-day eligibility requirement which begins on the date you become insured under the Converted Insurance. To the extent that you have satisfied a similar 30-day eligibility requirement under your Existing Insurance, this requirement will not apply to the prior level of benefits.

**Time Limit on Certain Defenses (Paragraph 2):** To the extent that this period has been satisfied under the Existing Insurance, the time period under the Converted Insurance is waived for the prior level of benefits.

- **RETURN OF PREMIUM BENEFIT**

Only premiums paid for the Converted Insurance after the Effective Date of the Converted Insurance will be used in determining benefits under the Converted Return of Premium Benefit.

The Accumulated Cancer Benefit will be payable on the Accumulated Benefit Payment Date provided the Converted Return of Premium Benefit is then in force. Any Accumulated ICU Benefit will also be payable on the Accumulated Benefit Payment Date provided both Cancer insurance and the Converted Return of Premium Benefit are then in force. Neither the Accumulated Cancer Benefit nor any Accumulated ICU Benefit will be paid more than once.

This amendment modifies the new policy forms, as applicable, only as stated above. All other terms and conditions of those forms remain in full force and effect. This amendment attaches to and is made part of the policy issued by Conseco Health Insurance Company.

Conseco Health Insurance Company

William J. Shea

President

**APPLICANT'S STATEMENT:** I have read, or have had read to me, this amendment. I understand that:

- any Existing Insurance will terminate on the date Converted Insurance becomes effective;
- the Converted Insurance will not be in effect until the Effective Date stated in the converted policy;
- if any person is excluded under the Existing Insurance, that person may be excluded under the Converted Insurance;
- if the application for Converted Insurance is rejected for any person insured under the Existing Insurance, that person will only be insured under the Converted Insurance up to the benefits levels provided under the Existing Insurance; and;
- all insurance not converted will remain the same.

Date: 2/12/08 Signature of Applicant: X Sabra Seagraves

**THIS SECTION TO BE COMPLETED BY AGENT:** I hereby certify that I have explained this amendment to the applicant. I further certify that I am a licensed agent in the state where this statement is being signed by the applicant.

Date: 2/12/08 Signature of Agent: [signature] Agency: 2/12/08